**IN THE COURT OF APPEALS OF IOWA**

No. 16-1460
Filed December 21, 2016

**IN THE INTEREST OF J.G.-J.,**
**Minor child,**

**B.G., Mother,**
Appellant.

_____

Appeal from the Iowa District Court for Johnson County, Deborah F. Minot, District Associate Judge.

A mother appeals the termination of her parental rights to her child. **AFFIRMED.**

Robin L. Miller, Marion, for appellant mother.

Thomas J. Miller, Attorney General, and Kathryn K. Lang, Assistant Attorney General, for appellee State.

Anthony A. Haughton of Linn County Advocate, Inc., Cedar Rapids, guardian ad litem for minor child.

Considered by Vaitheswaran, P.J., and Potterfield and Bower, JJ.

**VAITHESWARAN, Presiding Judge.**

A mother appeals the termination of her parental rights to her child, born in 2014. She contends (1) the State failed to prove the ground for termination cited by the juvenile court, and (2) termination was not in the child's best interests.

*I.* The juvenile court terminated the mother's parental rights pursuant to Iowa Code section 232.116(1)(h) (2015). This statutory provision requires proof of several elements including proof the child cannot be returned to the parent's custody. On our de novo review, we agree with the district court that this ground was proved.

Following the child's birth, the young mother left the child with the child's great-grandparents. After a year, the great-grandparents sought assistance with medical care for the child. The State filed a child-in-need-of-assistance petition. At this time, the mother was homeless. She stipulated to the child's adjudication as a child in need of assistance, and the department of human services initiated services for the family.

The mother was inconsistent in following through with services, and the State eventually filed a petition to terminate her parental rights. At the termination hearing, a service provider who supervised visits testified to the mother's failure to cooperate. He stated, "[I]t just seems that there wasn't ever a pattern that was maintained with visitation." He continued, "[W]e've had a lot of cancellations," and "[t]here was almost a month where nothing really happened. I didn't get any communication from [the mother]." The mother's failure to prioritize supervised visits with her child was unfortunate because, when they took place, they went well. In fact, the service provider found no "immediate

risks" and went so far as to transition the mother to semi-supervised visits, including overnight stays at the child's grandmother's house.

By the time of the termination hearing, the mother was staying with the child's grandmother. According to the grandmother, the mother had informal visits with her child in the grandmother's home following a study approving the home and following the department's approval of her as an informal supervisor. The grandmother's testimony was inconsistent with the mother's report that the imminent birth of a second child precluded her from visiting the child. Because the mother curtailed communication with the service provider and with the department in the three months preceding the termination hearing, the extent of contact between mother and child in those months is unclear.

For purposes of this opinion, we will assume the mother had contact with her child beyond the formal visits scheduled by the service provider. However, this informal contact did not make her ready to have the child returned to her custody. The mother's relationship with her mother and stepfather was tenuous. At the time of the termination hearing, she was looking for an apartment but had yet to secure one. She was unable to drive following an arrest a month before the termination hearing for driving with a suspended license as a habitual offender. The charge was pending as of the termination hearing.

In addition to these obstacles to reunification, the mother failed to follow through with mental health services recommended by the department. The department's recommendation was based on a psychological evaluation performed eight months before the termination hearing. After three sessions, the evaluator diagnosed the mother with other specified personality disorder (with

mixed features). The evaluator opined the mother's history was "notable for significant emotional distress and dysregulation, leading to a significant number of prior suicide attempts, and concern for her well-being." The evaluator recommended the mother "seek individual psychotherapy to aid her in the management of her depression, anxiety, and emotional regulation." The evaluator also suggested the mother consider "pharmacotherapy for management of her difficulties with mood and dysregulation." There was scant indication the mother complied with these recommendations.

We conclude the child could not be returned to the mother's custody at the time of the termination hearing.

*II.* Termination must also be in the child's best interests. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). The factors that may have militated against termination were the bond the mother shared with her child as well as the fact that the child was placed with a relative. The countervailing factor was the safety of the child. *See id.* The child was out of the mother's care for most of his life. Although the mother was able to feed and engage with him appropriately during the limited periods of supervised visitation, she failed to take advantage of the department's efforts to facilitate parenting on a more extended basis. Under these circumstances, we conclude termination was in the child's best interests. We affirm the termination of the mother's parental rights to her child.

**AFFIRMED.**